Littleton, Judge,
delivered the opinion of the Court :
Plaintiffs instituted this suit under an act approved June 25,1938, entitled “An Act to confer jurisdiction on the Court of Claims to hear, determine, and enter judgment upon the claims of Government contractors whose costs of performance were increased as a result of enactment of the National Industrial Recovery Act, June 16,1933.” (52 Stat. 1197.)
*258 The petition, alleges that on July 6, 1938, plaintiffs entered into a contract with the defendant for the demolition of certain coal sheds, U. S. Naval Fuel Depot, located at Melville, Rhode Island; that plaintiffs signed the President’s Reemployment Agreement on September 16, 1933, and operated under that agreement until March 24, 1934, on which date plaintiffs signed the Code of Fair Competition for the Scrap Iron and Steel Industry, which code was in effect during the remainder of the contract period; that after July 6, 1933, as a result of the enactment of the National Industrial Recovery Act, and subsequent to August 10, 1933, the cost of labor and materials necessary for the performance by plaintiffs of their contract increased materially over the costs which they anticipated and that they incurred costs not contemplated under the contract, suffered losses, and were damaged to the extent of $3,238.36.
The defendant demurs to the petition on the ground that it fails to state a cause of action against the Government for the reason that the contract between plaintiffs and the defendant, upon which the suit is based, discloses upon .its face that.the cause of action is not within the purview of the act of June 25, 1938.
The act of 1938 conferred upon this court jurisdiction to hear, determine, and enter judgments against the United States “upon the claims of contractors, including completing sureties and all subcontractors and materialmen performing work or furnishing material to the contractor or another subcontractor, whose contracts were entered into on or before August 10, 1933, for increased costs incurred as a result of the enactment of the National Industrial Recovery Act: Provided, That (except as to claims for increased costs incurred between June 16, 1933, and August 10, 1933) this section shall apply only to such contractors, including completing sureties and all' subcontractors and materialmen, whose claims were presented within the' limitation period defined in section 4 of the Act of June 16, 1934 (41 U. S. C., secs. 28-33).”
We are of opinion that the demurrer is well taken and must be sustained for the reason that the contract upon which the suit is based was a contract of sale by defendant *259 to plaintiffs of the structures and materials therein specified in the contract in consideration of $7.77 and the demolition and removal thereof by plaintiffs. The contract between the parties is comprised in an invitation for sealed bids for the purchase of certain condemned material belonging to the United States Navy located at the U. S. Naval Fuel Depot, Melville, Rhode Island, described in said invitation, and upon the terms and conditions' set out at length therein, and in plaintiffs’ written offer in response to. certain invitations for bids, and in the acceptance of such offer on behalf of the defendant by the supply officer at the U. S. Naval Fuel Depot. Examination of this contract exhibited with the petition filed discloses that it is a contract of sale by the United States to plaintiffs rather than a contract for the performance of work and labor for and the furnishing of materials to the United States at a fixed or unit price. The contract did not call for payment by the United States to plaintiffs of any sum of money whatever for any service to be performed or materials to. be furnished by plaintiffs. The contract, so far as material here, provided that—
The material will be sold as it lies, and must be removed by the original purchaser at his own expense. Full payment must be made before material is removed.
The contractor will be required to raze completely the sheds, towers, and trestle to the ground or foundation level. On all of these lots the contractor must clear thoroughly and clean up all areas worked over.
When an award is made and the purchase price is paid, the material so awarded becomes the property of the successful bidder, and the Government assumes no further responsibility.
The sale to plaintiffs of the materials in question was made under the act of June 30,1890, Title 34, U. S. Code, sec. 543, which provides as follows:
Sale of condemned supplies, stores, and materials.— The Secretary of the Navy is authorized to sell, after advertisement of the sale for such time as in his judgment the public interests may require, condemned naval supplies, stores, and materials, either by public auction or by advertisement for sealed proposals for the purchase of the same.
*260 In view of the nature of the contract upon which the petition is based and the provisions of the statute under which it was made, we are of opinion that the claim of plaintiffs is not one coming within the provisions of the act of June 25, 1938, supra, for the reason, as held by the Comptroller General on February 5,1935, under a similar statute of June 16, 1934, 41 U. S. Code 28-33 (14 Dec. Comp. Gen. 592), that “The act has no application to purchasers from the Government, and does not authorize the reimbursement of such purchasers for decrease in profit, increased costs of production, or losses sustained.”
The act of June 16, 1934, which so far as material in the present case was the same as the act of June 25, 1938, provided for the determination and settlement by the Comptroller General of claims of Government contractors for additional costs incurred by reason of the enactment of the National Industrial Kecovery Act, and, upon a contractor’s claim similar to the claim involved in the case at bar the Comptroller General further held at page 594, supra, as follows:
The purpose of the act was the relief of those who had entered upon a specific undertaking to perform work for or furnish supplies or material to the Government, after advertising and competitive bidding according to law, basing their bid prices upon prevailing costs of labor and material, and thereafter were faced with loss due to compliance with codes of fair competition.
The contract here is not within that category. It is merely a purchase of timber from the Government by a lumber company to be marketed at a profit. If, as claimed, the company’s overhead expenses were increased by reason of code compliance, there was, presumably, an increase in the prices charged by the company for its products. Manifestly, if the producer increased the sale price of its product to cover increased cost due to code compliance, there is no basis for seeking any adjustment from the Government. The Government, however, is not concerned with the realization or amount of profit by the purchaser.
We concur in the .Comptroller General’s decision as to the intent and purpose of the act with reference to reimbursement for increased costs by reason of the enactment of the *261 National Industrial Recovery Act and hold that his construction as to the act of June 16, 1984, is applicable alike to the act of June 26, 1938, since in the act of 1938 the Congress adopted, so far as material to the present case, the same language as that used in the act of 1934. (48 Stat. 974.)
The defendant’s demurrer is therefore sustained and the petition is dismissed.
Green, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.